Good morning, Your Honors. Gus Laje on behalf of the appellant Harrison Garcia. Your Honors, this matter is on appeal as a result of a trial where there was a conviction of Mr. Garcia. The matters have been fully briefed by both sides. I'm not going to belabor the minutia of the case. I'm going to jump right into what we believe to be the most egregious errors regarding the case that require reversal and a new trial. In regards to that matter, I would start off with dealing with the motions to suppress that were filed on behalf of Mr. Garcia relating to his initial stop and his request for counsel at that time. Mr. Garcia during his testimony indicated that on no less than three occasions he requested counsel. There was an individual, an agent that was called by the government to testify and to state that that was not the case. Agent Steliazis was called by the government and he indicated that he was with the defendant for most of the time while he was outside the house before the search took place, that he was with them a good portion of the time. He indicates that there were 15 to 20 agents at one point and that three to five agents had interaction with Mr. Garcia outside the residence. During cross-examination of Agent Steliazis, he indicated that at some point there was a time that he was not with Mr. Garcia although he was with them for the vast majority of the time. During the testimony of Mr. Garcia who elected to attorney that he asked for an attorney to an agent that was in the courtroom that had a beard. He also indicated that he had asked Agent Salent, although he misstated his name at the time of the hearing, he called him Agent Sanat, for an attorney as well. Neither of those two agents, although they were available, were ever called by the government. The testimony of Mr. Garcia was unrebutted as to his request for counsel in that regard. Another problem regarding the motion to suppress was the fact that the motion to suppress was conducted at that time at all. There was a problem with scheduling for defense counsel at the time. They had attempted to go see Mr. Garcia in order to prepare for the hearing. He was in custody with the state at the time that they went to go visit him. He was being transported over to federal custody when they went to visit him. He was unavailable for them to see and also he was unavailable for testing that had been set up with certain experts that the defense had hired at that time. In particular, a polygraph examination. If I recall correctly, there may have been an examination or issues relating to his signatures on the record. The magistrate decided to go forward with the hearing. The magistrate ultimately ruled against Mr. Garcia. The report and recommendation was adopted by the trial court. The trial court, in order to cure certain of the defects, which then became apparent when there was a renewed motion for reconsideration of the finding at the motion to suppress, ultimately decided to try and hold a new hearing and put the onus on the defense to call certain witnesses, including Agent Celent. The defense, correctly we believe, did not feel it was their burden to call Agent Celent at the time. We always have believed and maintain that the case law provides that the burden is on the government. They chose not to call Agent Celent and everybody stood on their previous arguments. Based on that, we believe that there is enough to suppress the statements and the evidence that was collected. The statements of Mr. Garcia led the government by Agent Sleazza's own admission to a subsequent house where drugs and firearms were found and to a storage unit as well. Going to the issue of errors at the trial, the most important issues which we would address relating to the evidence that was adduced at trial relates to the use of text messages, Instagram posts, social media as the basis or the linchpin for the government's case. There were numerous objections and pre-trial motions that were filed in limine as regards the admissibility of that evidence. The admissibility of the evidence was objected to on the basis of predicate, authenticity, hearsay, and all the objections were preserved. While we understand- Am I mistaken? I understood that at the pre-trial conference, Mr. Garcia conceded the authenticity of the post and messages. Your Honor, there was a stipulation as relates to the records custodian having to be called in, so as relates to the authenticity. We conceded that, but there is also the corollary argument to that, which is that they have to prove, at least we believe that a sister circuit has ruled, that it's not enough to just say, well, these posts were on Mr. Garcia's Instagram page, but they have to take a step and prove that Mr. Garcia actually posted that to his Instagram page. And that's contained within our brief, Your Honor, and we address that issue. Also, we objected to the fact that Agent Salent then went a step further and determined that he could interpret what was contained in those Instagram posts, those text messages, and everything else. He was called as a witness and testified in all respects as if he were an expert when there was no qualification for him as an expert. He was characterized as a summary witness, but for all intents and purposes, he was given the effect of an expert with any such predicate. So I know that you objected when Agent Salent was explaining the meaning of CHOPPA, but was there an overall objection to his qualifications to testify about the meaning of the drug slaying? Yes, we objected to Agent Salent testifying to it, and we objected to the expert Schwartz testifying to it. Other than at the point of his testimony about the specific word CHOPPA? Your Honor, I believe that our motion in limine covered all of it in general, and we had standing objections as relates to all of it. We objected during the testimony of Agent Salent. That was overruled, and if I remember correctly, Judge Seitz gave us a standing objection as relates to Agent Salent's testimony. There was also, Your Honor, the issue of Agent Salent testifying as to what Nathan Paredes, an alleged co-conspirator, stated at some point in time. The government would try and characterize that as invited error in relation to a question that was posed to Agent Salent. However, it overlooks the point that there was a taped statement of Mr. Paredes that was never disclosed to the defense despite the court's entry of the standing discovery order. The defense is prejudiced because they believed at the time that there was no statement from Mr. Paredes and that there had been, that that would have been disclosed as part of the standing discovery order. Furthermore, the taped statement was never produced and still hasn't been produced to this day. The procedure undertaken by the court to determine whether or not the defense was prejudiced by this surprise testimony of an alleged co-conspirator is problematic. But even putting that aside, there was no evidence that he was a co-conspirator at the point in time that the statements were made. They were made after the arrest of both individuals. There was no testimony as to how they engaged in the conspiracy together. Accordingly, it doesn't fit the criteria for admission of a statement by a co-conspirator, even if it had been disclosed, which it was not. But we believe that the most problematic aspect of it is the fact that it was not disclosed at all. Your Honor, we also objected to the 404B evidence involving a shootout. There was no evidence by Agent Salent that he had any knowledge of the alleged shootout. It was based on his interpretation of alleged posts on social media. There was no corroboration that a shooting had ever even occurred. There was no evidence as to when it occurred or who was even involved. I'll ask your colleagues this question, but was there any link between this purported shooting and what was on trial here? That was going to be an issue that I was going to state as well. There was no evidence that it involved the sale of drugs other than the use of firearms, which is what I believe that the government has put in their answer brief, that it involves and shows that he used firearms during sale of drugs. But there's nothing in that post or in the testimony that shows that this was involving the sale of drugs at all, or even when it occurred. We also objected to the introduction of Mr. Garcia's priors. They allowed the introduction of the police reports, which are blatant hearsay, and they allowed introductions of withholding adjudications, which under Florida law is not a conviction. All of this ties into the whole conviction by social media prior bad acts scenario, which taken cumulatively prejudiced Mr. Garcia's right to a fair trial in this matter. Your Honor, and since my time is short, I'm going to address the last issue, which is the use or possession of a firearm in relation to or in furtherance of a drug crime. The First Step Act may have taken care of that, but at the time the First Step Act didn't apply. We believe that there was no evidence that there was anything in furtherance of a drug crime and that the expert witness testimony wasn't enough regarding the second house and count five. Thank you, Your Honor. Thank you. Mr. Rubin? We've had your office working this week, haven't we? May it please the Court, Eli Rubin on behalf of the United States. With me at council table is Rilwan Adedantan, the AUSA who prosecuted this case. I'd like to begin with the question you teed up for us regarding the three Instagram posts regarding the shootout. I guess from my standpoint, I mean, you all had an awful lot of evidence in this case. I mean, that might have been a little over the top, don't you think? We certainly agree there was a lot of evidence. With regards to the Instagram posts, first of all, there was no 404B motion raised at the time of trial. And the Instagram posts occurred on February, March, and August of 2016. And it is the government's position that they are circumstantial evidence of the ongoing drug conspiracy, which was alleged to have occurred from 2013 until the time of Mr. Garcia's arrest in October of 2016. We have evidence that Mr. Garcia told Special Agent Salent that he had this arsenal of guns to protect him from rival drug dealers. We have the AK-47 at issue in these texts. Now, wait a minute. Is this an argument for why you needed to put in these Instagrams or why you didn't need to put in the Instagram? It's an argument for why it was appropriate evidence to introduce. But the court's point is taken that there was sufficient evidence elsewhere. I'd like to address the other issues raised by Mr. Garcia. First of all, with regards to the motion to suppress, just as a point of clarification, at docket entry 57, page 141, during the suppression hearing, Special Agent Salient testified specifically, I was with the defendant the whole time. The bearded mystery gentleman that Mr. Garcia identified in the courtroom was Customs and Border Agent Robert Fernandez. Mr. Garcia testified at that same suppression hearing that Mr. Fernandez only heard his third alleged invocation for counsel. But all of this is beyond, all of this is much less important than the critical determination that the magistrate judge made. It is a credibility determination. Exactly, exactly. And if there are no further questions on that issue, I'll move on to the other issues raised. With regards to the text messages and Instagram posts, just as a point of clarification, there are the Instagram posts and the text messages. The Instagram posts, the government filed, I believe it's docket entry 90, a motion in limine, notifying the party out of an abundance of caution that it would be filing this. 91, it gave notice that it would be introduced pursuant to federal rule of evidence 90211, business record. At the pretrial conference, Mr. Garcia only objected on relevancy and undue prejudice grounds. By my reading of the pretrial conference transcript, he did waive any authentication argument. Those records were introduced at trial on the first day of testimony, page 60. And at that time, the only standing objections were relevancy and undue prejudice. So any other argument Mr. Garcia raises now should be reviewed under plain error. Regarding the text messages, it's our position and the district court agreed that Mr. Garcia's objections to the introduction of the text messages were waived pursuant to government exhibit 72, which is a stipulation signed by Mr. Garcia and his counsel, which specifically states that the text messages are, quote, admissible at trial. So we believe any further argument has been waived by that stipulation. Your colleague said something about this case that I hadn't thought about, which probably means I shouldn't ask about it. He said that, I think I understood you to say, the First Step Act takes care of the stacking of the convictions. Is that, am I the only one that didn't know that? I don't believe it does either, but I'm not in a position to. It's not in the briefs, okay. I mean, I know there's effective dates. Yeah, we're happy to provide supplementary if you'd like. I mean, either it does or it doesn't. Turning to Special Agent Salen's testimony regarding Mr. Peretti's confession, you know, there are two alleged issues here. One is the discovery violation and the second is the inadmissible evidence. Clearly, this was invited by Mr. Garcia's counsel, and he has not identified any bases on which not turning over the confession was a discovery order, was a discovery violation. He said the pretrial order required you to turn it over. And that's not the case. The standing discovery order tracks the federal rules of criminal procedure, which only require us to hand over statements, certain statements of the defendant. It tracks Rule 16. Exactly. With regards to the state court convictions, the police reports accompanying the convictions were not introduced at trial, so that's not an issue on appeal. And the argument that an adjudication withholding, a conviction withholding adjudication does not constitute a conviction under Florida law, that was addressed by the district court. That's not the relevant analysis here. It's whether or not there's sufficient evidence of a prior bad act, and it's our position that a guilty plea is that sufficient evidence. Finally, with regard to Mr. Garcia's argument concerning sufficiency on counts three and five, there was an overwhelming amount of evidence. Mr. Garcia was arrested en route to a drug deal with a Glock firearm at his feet, in a backpack along with marijuana packaged for sale. In the room he controlled at the 29th Street residence, there were two other firearms, one with an aim point sight, which shoots out a red light, the other with an extended magazine with armor-piercing bullets. Both of those firearms were next to or steps from drugs, drug paraphernalia, including a scale, a vacuum sealing operation, and $5,000. In the Kendall Street condo, he had an AK-47 loaded on the sofa, steps from 5,000 pills of alprazolam. He had an Uzi loaded next to his bed and next to several bottles of promethazine with codeine. There was a statement by federal agent Salent that Mr. Garcia confessed to having this arsenal to protect him from rival drug dealers. He told special agent Salent that he used these guns to protect him during drug deals. His associate, Nathan Paredes, would come out shooting in case anything happened. There was the expert testimony, and there was even additional evidence. So we believe the evidence was overwhelming with regards to counts three and five. And as the court noted, the evidence was equally strong or certainly overwhelming in other areas with regards to counts one, two, and four. So I won't belabor that point. I don't think that's exactly the way up. Correct. Forgive me for missing it. No, I mean, if you want to talk about those Instagrams of the shooting some more, we can do that. That was my only point. That's probably unnecessary. But if there are no further questions, rely on our podcast. I think we're good. Thank you. Thank you. Your Honor, as relates to the issue of the testimony of Nathan Paredes and whether it's a discovery violation or not, the statements that were allegedly made by Mr. Paredes were in relation to not just his statements, but statements that he supposedly heard from Mr. Harrison Garcia. The discovery order relates to oral statements made by the defendant. We believe that that covers the statements that would have been made to Mr. Paredes and that were therefore relayed to Agents Allant, who used it in order to bolster his testimony relating to Mr. Garcia's guilt. Furthermore, we believe that there is a significant problem in the fact that the actual tape itself was never even reviewed or made available for review to check what the contents were, so that further cross-examination could be had on those particular issues. We're stuck in the position of just basically having to rely on whatever Agents Allant or Officer Son says is contained on those tapes as opposed to knowing what's actually contained on those tapes. There was the issue of whether it's over the top relating to the shooting incident. While the court points out that there was a lot of evidence, what may or may not tip the scales is something that needs to be analyzed by this court in determining whether or not Mr. Garcia received a fair trial. They're not just showing that he uses these firearms for protection or whatever the case might be, or as maybe even props for his Instagram posts and things of that nature and to bolster his street cred per se, but they're going one step further and trying to make a connection that he is actually shooting these guns, trying to kill people involved in a shootout in broad daylight in the middle of Miami-Dade County, Florida, without any evidence supporting that whatsoever. There's not a police report that shows that. There's no 911 tape that was made on the date of the incident. There's no witness that corroborates that that incident ever took place. There's simply text messages which are based on Agent Salent's interpretation of what those messages show. That's simply not enough under the law. And that in and of itself and by itself is sufficient to warrant a new trial in this matter, putting aside all the other cumulative errors which we believe dictate that there should be a new trial in this matter. And we appreciate the court's time, Your Honor. Thank you. Thank you. We appreciate yours. Thank you for being here.